2022 IL App (4th) 210204

NO. 4-21-0204

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 26, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ROBERT MILLER, | ) | Appeal from the |
|      Plaintiff-Appellant, | ) | Circuit Court of |
|      v. | ) | Ford County |
| THE DEPARTMENT OF AGRICULTURE, | ) | No. 19MR16 |
|      Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices DeArmond and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Robert Miller, appeals the circuit court's order that affirmed the decision of the director of the Department of Agriculture (Department), denying his claim for compensation from the Grain Code (240 ILCS 40/1-1 *et seq.* (West 2016)). Plaintiff contends, in part, the circuit court and the director erroneously interpreted section 10-15(e) of the Grain Code (*id.* § 10-15(e)) as triggering the automatic pricing of grain sold under a price later contract and the resulting placement of his claim outside the protections of the Grain Code. We agree with plaintiff and reverse.

¶ 2                                I. BACKGROUND

¶ 3    The Grain Code's main purpose is "to promote the State's welfare by improving

the economic stability of agriculture through the existence of the Illinois Grain Insurance Fund." *Id.* § 1-5. The Grain Insurance Fund affords protections to grain producers when licensed grain dealers, those in the business of purchasing grain from producers, fail. *Id.* When such a failure occurs, producers may seek compensation from the Grain Insurance Fund by filing a claim with the Department. See *id.* § 25-10. The protections of the Grain Insurance Fund are not limitless. There are deadlines that must be strictly enforced. See, *e.g.*, *id.* § 25-10(d).

¶ 4　　　　Plaintiff is a grain producer who entered multiple "price later contracts" with SGI Agri-Marketing, LLC (SGI), for the sale of grain. One such contract is Price Later Contract 215, the contract that is the basis for plaintiff's claim. Under the Grain Code, a " '[p]rice later contract' " is an agreement to sell grain where the purchase price will be later determined pursuant to a formula in the contract. *Id.* § 1-10. In this case, Price Later Contract 215 is a preprinted form. It was fully executed on March 15, 2016, after the grain had been delivered. Handwritten in the form is plaintiff's name as the seller and the number of bushels of grain involved: 15,508.25. A box is checked showing the grain was delivered between the handwritten dates of September 25, 2015, and January 26, 2016. According to Price Later Contract 215, the parties agreed to the means by which the purchase price would be determined. After this line, the box before "Basis" is checked, and plaintiff agreed to sell the grain to SGI for the contract price of July 2016 futures at the Chicago Board of Trade (CBOT), with some price variance for grain delivered on different dates, on any business day between the date of the contract and June 25, 2016. Under the terms of the contract, plaintiff, as the seller, was to select the "the contract month price."

¶ 5　　　　On the preprinted form, after the portion where the parties could write in the agreed upon terms, appears a section called "PRICE LATER DISCLOSURES—SELLER IS HEREBY CAUTIONED." Under the title appears in parentheses and italics: "These disclosures are

- 2 -

summaries of the Illinois Grain Code and are not intended to fully advise you of your legal rights and liabilities. Please refer to the Illinois Grain Code for the actual provisions." These disclosures include: "The contract must be signed by both parties within 30 days after the last date of delivery or the grain will be priced on the next available business day at the closing price on that day" and "[w]ithin 5 business days of Seller selecting a price for all or any part of the grain covered by a price later contract, the Buyer shall mail to the Seller a confirmation indicating the price selected."

¶ 6        On May 18, 2016, SGI sent a document entitled "Purchase Confirmation" to plaintiff, detailing the pricing of 15,508 bushels of grain. At the bottom of the purchase confirmation was a preprinted statement directing plaintiff to sign and return a copy immediately. Plaintiff signed the Purchase Confirmation on June 6, 2016.

¶ 7        On November 1, 2016, the Department determined a failure of SGI had occurred. The Department began the process of resolving SGI's affairs according to the Grain Code. SGI's grain-dealer license was revoked. On November 17, 2016, the Department's Bureau of Warehouses (Bureau) sent plaintiff a letter notifying him of SGI's failure.

¶ 8        On November 22, 2016, plaintiff filed a claim for reimbursement from the Grain Insurance Fund. Plaintiff sought compensation for 17,366.81 bushels of grain, which included grain sold pursuant to another price later contract not subject to this appeal. Because the grain was sold under a price later contract, price later contract 215, section 25-10(d) of the Grain Code applies to plaintiff's claim. See *id.* § 25-10(d). Section 25-10(d) allows a valid claim to be paid at 85% of its value if the grain was delivered or priced within 160 days of the failure *and* the contract was executed or the grain delivered not more than 365 days before the failure. *Id.* Regarding plaintiff's claim, the relevant dates are as follows: (1) November 1, 2016, the date of SGI's failure, (2) May 25, 2016, 160 days before SGI's failure, and (3) November 2, 2015, 365 days before the failure.

¶ 9        The Bureau, on February 7, 2017, denied plaintiff's claim, finding the grain sold but not paid for within 160 days of the failure. One month later, plaintiff served notice to the Department of a request for a hearing, maintaining the grain was not sold more than 160 days before the failure. The matter was assigned to the Bureau of Administrative Hearings of the Department of Central Management Services for adjudication. An administrative law judge (ALJ) was appointed.

¶ 10       The record contains proof of multiple communications between plaintiff and the Department's counsel in November and December 2017 regarding his claim. At one point, the Department's counsel agreed plaintiff presented a valid claim. Plaintiff disputed the amount owed, and the matter was not resolved.

¶ 11       By letter dated December 11, 2017, general counsel for the Department stated he concluded plaintiff's claim must be denied. General counsel informed plaintiff, as a matter of law under section 10-15(e) of the Grain Code, the grain was priced 30 days after delivery and this date placed his claim outside the requisite 160-day deadline. Section 10-15(e) provides the following:

> "Subject to subsection (f) of this Section, if a price later contract is not signed by all parties within 30 days of the last date of delivery of grain intended to be sold by price later contract, then the grain intended to be sold by price later contract shall be priced on the next business day after 30 days from the last date of delivery of grain intended to be sold by price later contract at the market price of the grain at the close of the next business day after the 29th day. When the grain is priced under this subsection, the grain dealer shall send

notice to the seller of the grain within 10 days. The notice shall contain the number of bushels sold, the price per bushel, all applicable discounts, the net proceeds, and a notice that states that the Grain Insurance Fund shall provide protection for a period of only 160 days from the date of pricing of the grain." *Id.* § 10-15(e).

¶ 12 The matter proceeded to the ALJ. Before the ALJ, as here, the parties disputed the date the grain was priced pursuant to price later contract 215. Plaintiff argued the grain was priced on June 6, 2016, when he signed the purchase confirmation. The Department countered the grain was automatically priced under section 10-15(e) on February 26, 2016, 30 days after the last grain delivery occurred as no price had been set.

¶ 13 The ALJ's analysis regarding the date of the pricing began by summarizing the parties' arguments. The ALJ then considered whether the parties intended to create a price later contract and, after considering the history of the transactions between SGI and plaintiff, as well as the terms of the contract, found they had so intended and had done so. The ALJ turned to the issue of pricing and found pricing did not occur on February 26, 2016, as the Department asserted: "[d]etermining that the intent was to enter into a price later contract, the pricing does not occur on February 26, 2016; rather, it occurs at a later date."

¶ 14 Upon concluding the pricing did not occur on February 26, 2016, the ALJ found the price was set within 160 days of SGI's failure and plaintiff was entitled to compensation from the Grain Insurance Fund. The ALJ reasoned pricing was complete on one of two dates, both after May 25, 2016. The first date, June 6, 2019, was the date plaintiff signed the purchase confirmation. The second date, May 28, 2016, is the date of the expiration of the Uniform Commercial Code's 10-day notice period when a party may object to a written confirmation. See 810 ILCS 5/2-201(2)

(West 2016).

¶ 15	In July 2018, the Department petitioned the director for reconsideration of the ALJ's July 23, 2018, order. Plaintiff did not file a response.

¶ 16	In its October 2018 decision, the director observed, before the ALJ, both sides submitted briefs in support of their arguments. The director observed no formal hearing was held. The director then found the ALJ order improperly relied on subsection (f) in its analysis of plaintiff's claim. Subsection (f), according to the director, applies to warehousemen, and SGI was not licensed as a warehouseman.

¶ 17	The director denied plaintiff's claim, concluding neither delivery nor pricing occurred within 160 days of SGI's failure. The director determined, because the parties failed to enter into a contract until March 15, 2016, the grain had been priced as a matter of law on February 26, 2016, 30 days after the last grain subject to price later contract 215, had been delivered. The director reversed the order of the ALJ and found plaintiff was not entitled to compensation from the Grain Insurance Fund.

¶ 18	Plaintiff appealed to the circuit court, which affirmed the order of the director. The court found pricing occurred on February 26, 2016, under section 10-15(e) of the Grain Code.

¶ 19	This appeal followed.

¶ 20	II. ANALYSIS

¶ 21	Although plaintiff also raises procedural arguments, the primary issue on appeal is whether the Grain Code, section 10-15(e) in particular, sets a pricing date as a matter of law when the parties do not enter a price later contract within 30 days of delivery. This is a matter of statutory interpretation, which is subject to *de novo* review. *Marsh v. Sandstone North, LLC*, 2020 IL App (4th) 190314, ¶ 63, 179 N.E.3d 402.

¶ 22    In interpreting a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Id.* The most reliable indicator of that intent is the language of the statute. *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 52, 146 N.E.3d 285. We consider the statute as a whole and do not construe words in isolation but in light of the other relevant provisions of the statute. *Marsh*, 2020 IL App (4th) 190314, ¶ 63. In this task, " '[n]o part of a statute should be rendered meaningless or superfluous.' " *Id.* (quoting *Van Dyke v. White*, 2019 IL 121452, ¶ 46, 131 N.E.3d 511). The statute at issue is part of the Grain Code, which is to "be liberally construed and liberally administered in favor of claimants." 240 ILCS 40/1-5 (West 2016).

¶ 23    In this case, the statute at issue is one administered by the Department, an administrative agency. This court on *de novo* review will defer to an agency's interpretation of a statute unless the interpretation is erroneous or unreasonable or the interpretation conflicts with the statute. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 31.

¶ 24    We turn to the language of the statute. The subsection at issue here is part of section 10-15 of the Grain Code, which is titled "Price later contracts." 240 ILCS 40/10-15 (West 2016). Section 10-15, "Price later contracts," appears within article 10 of the Grain Code, which is titled "Duties and Requirements of Licensees." 240 ILCS 40/art. 10 (West 2016). By definition, a licensee includes grain dealers and warehousemen, not producers. See *id.* § 1-10. Section 10-15 begins by mandating price later contracts contain provisions prescribed or authorized by the Department. *Id.* § 10-15(a). It then provides for the form, creation, and retention of price later contracts for only "licensed grain dealer[s]." See *id.* § 10-15(a), (h). Section 10-15 further mandates grain dealers who enter price later contracts maintain a specific number of assets when compared to the unpaid balance on obligations for grain purchased by price later contracts. See *id.* § 10-15(b).

¶ 25 Within this section of grain-dealer obligations, subsection (e) provides the following:

"Subject to subsection (f) of this Section, if a price later contract is not signed by all parties within 30 days of the last date of delivery of grain intended to be sold by price later contract, then the grain intended to be sold by price later contract *shall be priced* on the next business day after 30 days from the last date of delivery of grain intended to be sold by price later contract at the market price of the grain at the close of the next business day after the 29th day. When the grain is priced under this subsection, the grain dealer shall send notice to the seller of the grain within 10 days. The notice shall contain the number of bushels sold, the price per bushel, all applicable discounts, the net proceeds, and a notice that states that the Grain Insurance Fund shall provide protection for a period of only 160 days from the date of pricing of the grain." (Emphasis added.) *Id.* § 10-15(e).

We note subsection (f), to which subsection (e) refers, is not applicable to this case, as it applies to grain stored with a warehouseman (see *id.* § 10-15(f)) and there is no evidence the grain at issue was stored in that manner.

¶ 26 Plaintiff argues nothing within the language of subsection (e) indicates the pricing occurs automatically. Plaintiff emphasizes the word "be" in "shall be priced" as requiring an actor and contends only dealers have authority under the Grain Code to prepare the price later contracts and comply with section 10-15's notice requirements. Plaintiff concludes simply because the law

required SGI to price the grain does not mean SGI did so.

¶ 27     The Department counters the language of the Grain Code is clear: if the parties fail to enter into a contract within 30 days of the last delivery, the grain "shall be priced on the next business day." *Id.* § 10-15(e). The Department contends the statute does not indicate who prices the grain and, therefore, the plain meaning of the provision is that the grain is priced automatically on the thirtieth day. The Department argues this reading is consistent with the rest of the Grain Code that states when a particular entity, like a grain dealer or producer, is mandated to do something but remains silent to the actor, an event occurs automatically. The Department maintains the rest of the Grain Code states "explicitly" when a particular entity is mandated to do something but stays silent as to the actor when an event occurs automatically.

¶ 28     In subsection (e), the legislature used the words "shall be priced." This admonition is in passive voice, meaning the subject of the sentence must act on the object of the sentence. See *Active and Passive Voice*, Am. Psychological Ass'n, https://apastyle.apa.org/style-grammar-guidelines/grammar/active-passive-voice (last visited Apr. 19, 2022) [https://perma.cc/Z2NA-NSAY]. In this case, grain is the object of the sentence. An entity, unnamed in the same sentence in which "shall be priced" appears, is the subject directed to perform the mandated task of pricing the grain. To "price" means "to set a price on" or "to find out the price of." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/price (last visited Apr. 19, 2022) [https://perma.cc/42ZF-6H9M]. Thus, the plain language of the statute dictates an individual or entity shall set a price on or find out the price of the grain.

¶ 29     Contrary to the Department's contention, the absence of an identified person or entity in the same sentence as "shall be priced" does not indicate the pricing occurs automatically. Within section 10-15, there is language establishing when an event occurs automatically. In

subsection (d), for example, the legislature dictates "[t]itle to grain sold by price later contract *shall transfer* to a grain dealer at the time of delivery of the grain." (Emphasis added.) 240 ILCS 40/10-15(d) (West 2016); see also *id.* § 1-10 (under the definition of " '[p]rice later contract,' " "Title to the grain passes to the grain dealer at the time of delivery."). The language does not include passive language like "shall be transferred." Instead, title actively transfers without further action. Interestingly, in this situation where the transfer is automatic, there is no requirement notice of this transfer be provided. Had the legislature intended pricing to occur automatically in subsection (e), similar language would have been used: "the grain intended to be sold by price later contract *shall price* on the next business day" or "the grain intended to be sold by price later contract *prices* on the next business day."

¶ 30      Further, we find the context of the "shall be priced" mandate establishes the legislature intended the grain dealer to price the grain according to subsection (e)'s terms. As shown above, subsection (e) appears in the article of the Grain Code specifying duties and requirements of grain dealers. In addition, the sentence following "shall be priced" explicitly directs the grain dealer to provide notice to the seller or producer so that the producer is aware of the pricing and can protect itself accordingly. See *id.* § 10-15(e) ("When the grain is priced under this subsection, the grain dealer shall send notice to the seller" that "states that the Grain Insurance Fund shall provide protection for a period of only 160 days from the date of pricing of the grain."). If the pricing was meant to be automatic, like the transfer of title, no notice would have been necessary. Plainly, the legislature intended the grain dealer to act by setting or determining the price and then inform the producer or seller it had done so.

¶ 31      In its brief, the Department compares subsection (e)'s "shall be priced" language to the Code of Civil Procedure's now-deemed-unconstitutional language "recovery of non-economic

damages shall be limited to $500,000 per plaintiff" (735 ILCS 5/2-1115.1 (West 1996)), ruled unconstitutional in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 406, 669 N.E.2d 1057, 1076 (1997). The Department argues the statutory cap of section 1115.1 occurred automatically as a matter of law without need for more action by the court. We disagree with that conclusion. Initially, we note there is no analysis of the meaning of "shall be limited" in the case cited by the Department. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 930 N.E.2d 895 (2010). In addition, the use of "shall be limited" is passive voice, requiring the circuit court or trier of fact to limit the amount of damages awarded. While the cap may have been "automatic" in that it applied to civil cases, an award of damages did not "automatically occur." According to section 1115.1, the trier of fact, or the court in its directions to the jury, had to limit those damages.

¶ 32 The Department further argues plaintiff's reading of subsection (e) would render the mandatory pricing requirement meaningless as parties could enter price later contracts well after the deliveries, as here, with no consequence. We are not persuaded. Section 10-15 sets forth a penalty to ensure grain dealers comply with the Grain Code. In subsection (j), a grain dealer that does not comply with the requirements of section 10-15, which includes subsection (e), is subject to suspension of the privilege of purchasing grain through price later contracts. 240 ILCS 40/10-15(j) (West 2016) ("Failure to comply with the requirements of this Section may result in suspension of the privilege to purchase grain by price later contract for up to one year."). Grain dealers that do not comply with subsection (e)'s mandate to price the grain and give notice to the producer are subject to punishment by the Department. This provides sufficient reason for grain dealers not to engage in the bad-faith negotiations or tactics the Department professes to fear.

¶ 33 The Department's only remaining complaint regarding the ALJ decision is the ALJ's references to subsection (f) in its analysis of plaintiff's claim. The Department contends the

- 11 -

analysis was improper as subsection (f) involves warehousemen and SGI was not a warehouseman as defined by the Grain Code.

¶ 34    Our review of the record shows the ALJ considered subsection (f) only on the issue of when price later contract 215 was signed:

> "Application of Section 10-15(f) of the Code concludes that grain delivered after September 25, 2015, through March 15, 2016, the date of [price later contract 215], was in the possession of SGI as 'remaining in storage and not deemed to be sold by price later contract' until March 15, 2016, the date of Claimant's execution of [price later contract 215]. Therefore, the grain was sold on March 15, 2016, but priced according to a traditional mechanism for such contracts."

This determination by the ALJ had no effect on the ultimate question here—whether the grain was priced within the 160-day period before SGI's failure. In fact, even the Department agrees the contract was signed on March 15, 2016. The only nonprocedural issue in this appeal is the question of whether section 10-15(e) triggered an automatic pricing of the grain sold by plaintiff to SGI under price later contract 215. There is no indication subsection (f) had any effect on the ALJ's decision on when pricing occurred.

¶ 35    The Department's interpretation conflicts with the unambiguous language of subsection (e), meaning we will not defer to it. See *Medponics Illinois*, 2021 IL 125443, ¶ 31. Having found plaintiff prevails on his substantive claim, we need not address his procedural arguments.

¶ 36                                III. CONCLUSION

- 12 -

¶ 37        We reverse the circuit court's judgment affirming the Department's decision and affirm the decision of the administrative law judge.

¶ 38        Reversed.

---

**No. 4-21-0204**

---

| | |
|---|---|
| **Cite as:** | *Miller v. Department of Agriculture*, 2022 IL App (4th) 210204 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Ford County, No. 19-MR-16; the Hon. Matthew J. Fitton, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Timothy B. Cantlin, of Cantlin Law Firm, of Ottawa, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Nadine J. Wichern and Anna W. Gottlieb, Assistant Attorneys General, of counsel), for appellee. |

---