# Illinois Official Reports

## Supreme Court

---

### *Miller v. Department of Agriculture*, 2024 IL 128508

---

| | |
|---|---|
| Caption in Supreme Court: | ROBERT MILLER, Appellee, v. THE DEPARTMENT OF AGRICULTURE, Appellant. |
| Docket No. | 128508 |
| Filed | March 21, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Ford County, the Hon. Matthew J. Fitton, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Bridget DiBattista and Anna W. Gottlieb, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>Timothy B. Cantlin, of Ottawa, for appellee. |
| Justices | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion. |

## OPINION

¶ 1    The Illinois Department of Agriculture (Department) administers the Illinois Grain Insurance Fund, which is used to compensate grain producers for losses suffered when a licensed grain dealer or a licensed warehouseman fails. 240 ILCS 40/25-10(d) (West 2016). Plaintiff, Robert Miller, is a grain producer who filed a claim with the Department after SGI Agri-Marketing, LLC (SGI), a licensed grain dealer in the business of purchasing grain from producers, failed before making payment under the parties' "price later contract."

¶ 2    A price later contract allows a seller to deliver grain to a dealer without a price, which is set later according to a formula in the contract. *Id.* § 1-10. This appeal concerns the mechanism of delayed pricing, as the pricing date dictates whether plaintiff is eligible for compensation from the fund.

¶ 3    Plaintiff and the Department dispute whether the grain was priced according to the price later contract or as a matter of law under section 10-15(e) of the Grain Code (*id.* § 10-15(e)). We agree with the Department that, because plaintiff and SGI did not sign their contract within 30 days of the completion of the grain delivery, section 10-15(e) automatically priced the grain at the market price 30 days after delivery, obviating the need for the parties to agree on a pricing formula. Because the grain was priced on a date outside the protection window prescribed by the Grain Code, plaintiff is not eligible for compensation from the fund.

## I. BACKGROUND

¶ 5    The Grain Code was enacted

> "to promote the State's welfare by improving the economic stability of agriculture through the existence of the Illinois Grain Insurance Fund in order to protect producers in the event of the failure of a licensed grain dealer or licensed warehouseman and to ensure the existence of an adequate resource so that persons holding valid claims may be compensated for losses occasioned by the failure of a licensed grain dealer or licensed warehouseman." *Id.* § 1-5.

A further purpose of the Grain Code is to provide a single system of governmental regulation of the Illinois grain industry to contribute to the economic health of this state. *Id.* The Grain Code shall be liberally construed and liberally administered in favor of claimants. *Id.*

## A. Price Later Contract 215 and the Grain Code

¶ 7    The pertinent facts are not disputed. From September 2015 through January 2016, plaintiff delivered 15,508 bushels of grain to be sold to SGI. The contract covering the deliveries, and the basis of plaintiff's claim for compensation, is "Price Later Contract 215."

> " 'Price later contract' means a contract, in written or electronic form, for the sale of grain whereby any part of the purchase price may be established by the seller after delivery of the grain to a grain dealer according to a pricing formula contained in the contract. Title to the grain passes to the grain dealer at the time of delivery. The precise form and the general terms and conditions of the contract shall be established by rule." *Id.* § 1-10.

¶ 8      Signing a price later contract does not price the grain. Rather, it establishes a formula under which the seller may price the grain weeks or months later. Price Later Contract 215 is a preprinted form that stated plaintiff agreed to sell grain to SGI for the contract price of July 2016 futures at the Chicago Board of Trade (CBOT), with some price variance for grain delivered on different dates, on any business day between the date of the contract and June 25, 2016. The pricing formula authorized plaintiff to select the contract-month price.

¶ 9      The date of the last grain delivery to be applied to the contract's quantity requirement was January 26, 2016. But SGI did not sign the contract until March 9, 2016, and plaintiff signed and returned the contract on March 15, 2016. Thus, the contract was signed by all parties more than 30 days after the last delivery.

¶ 10      The parties' delay in signing the contract is significant because section 10-15(e) of the Grain Code contains a pricing mechanism for price later contracts that are not signed within 30 days of delivery:

> "[I]f a price later contract is not signed by all parties within 30 days of the last date of delivery of grain intended to be sold by price later contract, then the grain intended to be sold by price later contract *shall be priced* on the next business day after 30 days from the last date of delivery of grain intended to be sold by price later contract *at the market price* of the grain at the close of the next business day after the 29th day. *When the grain is priced under this subsection, the grain dealer shall send notice to the seller of the grain* within 10 days. The notice shall contain the number of bushels sold, the price per bushel, all applicable discounts, the net proceeds, and a notice that states *that the Grain Insurance Fund shall provide protection for a period of only 160 days from the date of pricing of the grain*." (Emphases added.) *Id.* § 10-15(e).

¶ 11      Price Later Contract 215 paraphrased the pricing provision of section 10-15(e). The form stated, "[t]he contract must be signed by both parties within 30 days after the last date of delivery or the grain will be priced on the next available business day at the closing price on that day."

¶ 12      Although the parties did not sign the contract within 30 days after delivery and despite the inclusion of the automatic pricing provision, the form contract also set forth a process whereby the parties could price the grain themselves. The form stated that, "[w]ithin 5 business days of Seller selecting a price for all or any part of the grain covered by a price later contract, the Buyer shall mail to the Seller a confirmation indicating the price selected."

¶ 13      Plaintiff informed SGI of his desired price under the contract's pricing formula, and on May 18, 2016, SGI sent plaintiff a document titled "Purchase Confirmation" stating that price. The confirmation included a preprinted statement directing plaintiff to sign and return a copy immediately. Plaintiff signed and returned the confirmation on June 6, 2016.

¶ 14      Plaintiff and SGI proceeded as though they had priced the grain on June 6, 2016, even though they signed Price Later Contract 215 more than 30 days after the last delivery and the contract paraphrased the pricing provision set forth in section 10-15(e). In any event, SGI did not give plaintiff notice of the 160-day protection window or pay for the grain.

¶ 15                                B. Plaintiff's Claim

¶ 16      On November 1, 2016, the Department discovered irregularities in SGI's financial statements and suspended its grain-dealer license. The Department began resolving SGI's

affairs and revoked its license, which constituted a failure under the Grain Code. *Id.* § 1-10. The Department's Bureau of Warehouses (Bureau) notified plaintiff of SGI's failure.

¶ 17 On November 22, 2016, plaintiff filed a claim with the Department for compensation from the Grain Insurance Fund. He has narrowed his claim to $83,210 in losses for grain deliveries to SGI from September 2015 through January 2016.

¶ 18 Section 25-10 of the Grain Code entitles grain producers to compensation from the fund for certain percentages of their losses, depending on when the grain was delivered and priced, relative to the date of the failure. The timing of delivery, pricing, and the failure are crucial to the validity of a claim. For example, section 25-10(c) entitles a producer to 100% of his valid claim if (1) he delivers the grain within 21 days of the failure or a license suspension resulting in failure and (2) the grain is priced before the failure. *Id.* § 25-10(c). By contrast, section 25-10(g) provides that "claims shall be barred and disallowed in their entirety" when the grain is delivered and priced more than 160 days before the date of failure. *Id.* § 25-10(g).

¶ 19 Here, the sequence of events makes plaintiff's claim potentially compensable under section 25-10(d) of the Grain Code, which states:

> "(d) Valid claims that are not included in subsection (c) of this Section that are filed by producers where the later date of completion of delivery or pricing of the grain is within 160 days before the date of failure shall be paid 85% of the amount of the valid claim determined by the Department or $250,000, whichever is less, per claimant. In computing the 160-day period, the phrase 'date of completion of delivery' means the date of the last delivery of grain to be applied to the quantity requirement of the contract, and the phrase 'the later date' means the date closest to the date of failure. In addition, for claims filed by producers for grain sold on a contract, the later of the date of execution of the contract or the date of delivery of the grain covered by the price later contract must not be more than 365 days before the date of failure in order for the claimant to receive any compensation. In computing the 365-day period, the phrase 'the later of the date' means the date closest to the date of failure, and the phrase 'date of delivery' means the date of the last delivery of grain to be applied to the quantity requirement of the price later contract." *Id.* § 25-10(d).

¶ 20 To simplify for clarity, section 25-10(d) allows a claim to be paid at 85% of its value if the claimant can satisfy two elements: (1) the grain was delivered or priced not more than 160 days before the dealer's failure and (2) the contract was executed or the grain was delivered not more than 365 days before the failure. *Id.* In this case, plaintiff asserts he is eligible for $70,729 in compensation, which amounts to 85% of his $83,210 in losses.

¶ 21 The Department correctly concedes that plaintiff has satisfied the second element. The contract was executed on March 15, 2016, and the grain delivery was completed on January 26, 2016, both of which were not more than 365 days before SGI's failure on November 1, 2016.

¶ 22 As to the first element, losses from a price later contract are not compensable when the grain is both delivered and priced more than 160 days before the date of failure. In this case, May 25, 2016, was 160 days before SGI's failure. So, the parties correctly agree that the January 26, 2016, delivery date does not satisfy the 160-day requirement.

¶ 23 However, plaintiff argued to the Department that the grain was priced when he signed the purchase confirmation on June 6, 2016, which was less than 160 days before the failure. The

- 4 -

Department responded that section 10-15(e) of the Grain Code automatically priced the grain as a matter of law on February 26, 2016, which was the next business day after 30 days after the last grain delivery, as the parties had not signed a contract agreeing to a pricing formula by then. On February 7, 2017, the Department notified plaintiff that his claim was not eligible for compensation because the grain had been sold and priced more than 160 days before the failure.

¶ 24    The matter was assigned to the Bureau of Administrative Hearings of the Department of Central Management Services. An administrative law judge (ALJ) was appointed. The ALJ ruled for plaintiff, finding that pricing was complete on one of two dates, both occurring not more than 160 days before the failure. The first date, June 6, 2016, was the date plaintiff signed the purchase confirmation. The second date, May 28, 2016, was the date of the expiration of the Uniform Commercial Code's (UCC) 10-day notice period when a party may object to a written confirmation. See 810 ILCS 5/2-201(2) (West 2016) (merchants may use confirmatory memoranda to satisfy the UCC's requirement that certain contracts for the sale of goods be shown in a record indicating a sale has been made).

¶ 25    The Department petitioned the Director of Agriculture for reconsideration. Consistent with the Department's initial determination, the director reversed the ALJ's order, finding that, because plaintiff and SGI had not executed Price Later Contract 215 within 30 days of the last delivery, section 10-15(e) priced the grain as a matter of law on February 26, 2016. The director denied plaintiff's claim, concluding that both the final delivery (January 26, 2016) and the automatic pricing (February 26, 2016) occurred before May 25, 2016, and therefore occurred more than 160 days before SGI's failure (November 1, 2016).

¶ 26    Plaintiff filed a complaint for administrative review in the circuit court of La Salle County. Venue was transferred to the circuit court of Ford County, which affirmed the director's decision to deny the claim. The appellate court reversed the circuit court's judgment, concluding that the grain was priced on June 6, 2016, when plaintiff confirmed the price. The appellate court held "the context of the 'shall be priced' mandate [of section 10-15(e)] establishes the legislature intended the grain dealer to price the grain according to subsection (e)'s terms." 2022 IL App (4th) 210204, ¶ 30. The appellate court simply concluded that the parties priced the grain on June 6, 2016, without explaining how SGI's failure to price the grain 30 days after delivery authorized the parties to price the grain later. The Department petitioned this court for leave to appeal, which we allowed. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 27                                II. ANALYSIS
¶ 28                            A. Standard of Review
¶ 29    In an administrative review action like this one, "we review the decision of the administrative agency, not the appellate court." *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 136 (2009). Determining the date on which the grain was priced involves statutory interpretation, which is guided by familiar, well-established principles. Our goal is to ascertain the legislature's intent, and the best indicator of legislative intent is the language of the statute, given its plain, ordinary meaning. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17. If the language is clear and unambiguous, it should be given effect as written without resort to aids of statutory interpretation. *Id.*

¶ 30    If the statutory language is ambiguous, however, we may look to other sources to ascertain the legislature's intent. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46 (2002).

When a statute is ambiguous, a court gives substantial weight and deference to the agency charged with administering and enforcing that statute. *Id.* A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more ways. *Id.* The construction of a statute is a question of law that is reviewed *de novo*. *Id.*

¶ 31                              B. Section 10-15(e)

¶ 32      The issue presented is whether section 10-15(e) of the Grain Code priced the grain sold under the price later contract, thereby excluding plaintiff's insurance claim from the protections of the Grain Code. Our interpretation of section 10-15(e) is straightforward. Price Later Contract 215 was signed by all parties on March 15, 2016, which was more than 30 days after the last grain delivery, January 26, 2016. The grain intended to be sold by Price Later Contract 215 "*shall be priced* on the next business day after 30 days from the last date of delivery of grain intended to be sold by price later contract at the market price of the grain at the close of the next business day after the 29th day." (Emphasis added.) 240 ILCS 40/10-15(e) (West 2016). Thus, the date of pricing was February 26, 2016, the next business day after 30 days from the last date of delivery of grain.

¶ 33      Plaintiff argues that, when section 10-15(e) requires grain to be priced, the statute unambiguously requires *the grain dealer* to take the affirmative act of pricing the grain. Plaintiff contends that section 10-15(e) required SGI to price the grain on February 26, 2016, and, when SGI failed to do so, the parties were free to price the grain later, according to their contractual formula. Under plaintiff's interpretation of section 10-15(e), SGI's omission allowed the grain to be priced on June 6, 2016, when plaintiff signed the purchase confirmation. Plaintiff concludes section 25-10(d) entitles him to compensation from the fund because the parties priced the grain not more than 160 days before the failure. We disagree.

¶ 34      The legislature's use of the phrase "shall be priced" indicates an intent to impose a mandatory obligation that the grain be priced at the market price if a price later contract is not signed by all parties within 30 days of the last delivery. See, *e.g.*, *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001) (the word "shall" indicates a legislative intent to impose a mandatory obligation). The pricing provision states the grain must be priced, but it does not refer to grain producers, grain dealers, or any other individual or entity. Contrary to plaintiff's assertion and the reasoning of the appellate court, the unambiguous text of the pricing provision did not require SGI to take an affirmative act to select or ascertain a price for the grain. See 2022 IL App (4th) 210204, ¶ 28. Section 10-15(e) is self-executing in that it prices the grain automatically at the market price if the conditions of the statute are met.

¶ 35      Our interpretation of the pricing provision is consistent with section 10-15(e)'s notice requirement. When section 10-15(e) priced the grain as a matter of law on February 26, 2016, the statute required SGI to notify plaintiff within 10 days that, *inter alia*, "the Grain Insurance Fund shall provide protection for a period of only 160 days from the date of pricing of the grain." 240 ILCS 40/10-15(e) (West 2016). The statute refers to pricing and notice separately, mentioning the grain dealer only in terms of notice. *Id.* ("When the grain is priced under this subsection, the grain dealer shall send notice to the seller of the grain within 10 days."). If the legislature had intended plaintiff's interpretation that section 10-15(e) required SGI to price the grain, the text might read "When the grain is priced *by the grain dealer* under this subsection, the grain dealer shall send notice to the seller of the grain within 10 days." We

decline to read into section 10-15(e) the condition that the grain shall be priced by the grain dealer. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31 (a court should not depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent).

¶ 36        Furthermore, nothing in the plain language of the statute suggests the seller and purchaser may override the automatic pricing provision by agreeing to a pricing formula more than 30 days after delivery is completed. Even if section 10-15(e) required SGI to price the grain, SGI's noncompliance would not leave the grain unpriced, as the statute provides that the grain "shall be priced," without exception.

¶ 37        We recognize that the Grain Code must be liberally construed and liberally administered in favor of claimants and that our decision results in an unfortunate outcome for plaintiff. But our restrictive interpretation of section 10-15(e)'s pricing provision gives effect to the legislature's intent to stabilize grain markets.

¶ 38        When a producer delivers grain without a price, title to the grain passes to the dealer, who can resell the grain and speculate with the proceeds. Delaying pricing for a grain sale delays payment, facilitates speculation, and introduces risk into the market. Improving the economic stability of agricultural markets is an explicit goal of the Grain Code, and the statute's automatic pricing provision promotes that goal by bringing more certainty to price later contracts. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27 (when determining legislative intent, a court should consider the reason for the law, the problems to be remedied, and the objects and purposes sought). If section 10-15(e) did not operate as a matter of law, producers and dealers could add unnecessary risk to the market by routinely entering into price later contracts long after delivery. And adopting plaintiff's interpretation would distort the Grain Insurance Fund's compensation structure by allowing producers and dealers to manipulate the fund's protections by leaving grain unpriced.

¶ 39        We conclude the grain was priced automatically, pursuant to the plain and ordinary meaning of section 10-15(e), on February 26, 2016, the next business day after 30 days from the last date of delivery. The grain's value was set as a matter of law at the market price at the close of February 25, 2016, the next business day after the twenty-ninth day. Plaintiff is not eligible for compensation under section 25-10(d) because the grain was delivered and priced more than 160 days before SGI failed.

¶ 40        That said, we acknowledge that SGI did not comply with section 10-15(e)'s notice requirement, which is intended to alert sellers that pricing the grain opens the fund's protection window. 240 ILCS 40/10-15(e) (West 2016). SGI did not provide notice that "the Grain Insurance Fund shall provide protection for a period of only 160 days from the date of pricing of the grain" (*id.*), and plaintiff is left without compensation for his losses.

¶ 41        Plaintiff argues SGI's failure to send the notice negated the automatic pricing, permitting plaintiff and SGI to price the grain more than 30 days after the last delivery. We disagree. The unambiguous text of section 10-15(e) does not condition automatic pricing on the grain dealer sending the notice. In this instance, the Grain Code's selective use of passive voice—"shall be priced"—indicates the legislature intended that the pricing provision operate as a matter of law, irrespective of whether the dealer complies with the notice requirement that the automatic pricing triggers. Although failure to provide notice does not negate automatic pricing, the requirement is not superfluous. A grain dealer who disregards its obligations concerning price

later contracts risks a suspension. See *id.* § 10-15(j) ("Failure to comply with the requirements of this Section may result in suspension of the privilege to purchase grain by price later contract for up to one year.").

¶ 42 Plaintiff makes a related, equitable argument that pricing the grain as a matter of law and opening the protection window without notice is unfair. The Department responds that, "as a practical consideration of grain sales," the producer has control over the relevant statutory periods. The producer, by choosing the delivery date, triggers the 30-day period for entering into the price later contract. The Department persuasively argues,

> "[o]nly if that time lapses without a price later contract being signed is the grain priced as a matter of law. The producer knows when the automatic pricing may occur because he is the one to have performed the triggering event by delivering the grain. Thus, nothing occurs without the producer's knowledge, alleviating any fairness concerns."

Moreover, when the grain is priced automatically soon after the last delivery, the producer may demand payment from the dealer, mitigating the risk from a potential failure.

¶ 43 Plaintiff alternatively argues that the grain was priced pursuant to a secondary clause in section 10-15(e). He cites the statute's last sentence for the proposition that, when a price later contract is not signed within 30 days of delivery and the dealer fails, the producer and dealer can override the automatic pricing provision if the evidence indicates they intended the grain to be sold by price later contract. See *id.* § 10-15(e) ("In the event of a failure, if a price later contract is not signed by all the parties to the transaction, the Department may consider the grain to be sold by price later contract if a preponderance of the evidence indicates the grain was to be sold by price later contract."). Plaintiff argues he and SGI priced the grain on June 6, 2016, because "[i]t is irrefutable that a preponderance of the evidence proves the parties intended the grain be sold by a price later contract," not by operation of section 10-15(e). Plaintiff strips the secondary clause of its context.

¶ 44 In this case, the parties signed Price Later Contract 215 before SGI's failure. But the secondary clause in section 10-15(e) permits grain to be treated as if it were sold by price later contract when a contract "is not signed" at all. Because section 10-15(e) states that grain "shall be priced" at the market price if a price later contract is not signed within 30 days of delivery, the secondary clause cited by plaintiff can apply only when the failure occurs before the grain is priced automatically. Here, plaintiff and SGI entered into a belated price later contract, which is not the same as treating grain like it was sold under a timely price later contract because the dealer failed less than 30 days after delivery.

¶ 45 Plaintiff also echoes the ALJ's finding that the grain was not priced without SGI taking "affirmative action" under the UCC. Noting that the UCC governs commercial transactions such as the price later contract between plaintiff and SGI (see *Sierens v. Clausen*, 60 Ill. 2d 585, 589 (1975)), the ALJ determined section 2-201 requires some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker (see 810 ILCS 5/2-201 (West 2016)). Plaintiff argues "[t]he only affirmative action regarding pricing of this grain occurred on June 6, 2016, when plaintiff signed purchase contract P-9733 establishing a price for the grain within the 160-day window."

¶ 46 However, we agree with the Department that the UCC does not apply because it does not require that any portion of the contract be in writing where, like here, goods have already been

delivered and accepted (see *id.* § 2-201(3)(c) ("A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable *** with respect to goods *** which have been received and accepted ***.")). We take the Department's additional point that the UCC does not apply because the dispute is not over whether a sale of goods occurred but rather whether plaintiff can recover from the Grain Insurance Fund under the provisions of the Grain Code.

¶ 47                                C. Procedural Arguments

¶ 48      Finally, plaintiff renews procedural arguments that the director lacked authority to reconsider the ALJ's decision and that he was improperly denied an adequate hearing before the agency. However, as the Department points out, the administrative regulations allow for a petition for reconsideration. 8 Ill. Adm. Code 1.124 (1992) ("The Director shall review a petition for reconsideration or stay of administrative action and within 90 days from the date of receipt of such petition notify the petitioner in writing of his or her decision. The Director's decision on the matter which was reconsidered or stayed shall be the final administrative decision of the agency."). Furthermore, plaintiff has not demonstrated a need for an additional hearing; he does not articulate what evidence or argument he has been precluded from presenting. As discussed, our review of the Department's denial of plaintiff's claim is *de novo* because the salient facts are not disputed.

¶ 49                                   III. CONCLUSION

¶ 50      We hold that section 10-15(e) of the Grain Code is unambiguous; the plain and ordinary meaning of the statute provides that, when the parties to a sale of grain intend the grain to be sold by price later contract and a price later contract is not signed by all the parties to the transaction within 30 days after the last date of delivery, the grain shall be priced as a matter of law on the next business day after 30 days from the last delivery. Because section 10-15(e) operated to price plaintiff's grain outside the 160-day protection window prescribed by the Grain Code, he is not eligible for compensation from the Grain Insurance Fund. Accordingly, we affirm the circuit court's judgment and reverse the appellate court's judgment.

¶ 51      Appellate court judgment reversed.
¶ 52      Circuit court judgment affirmed.