No. 1-24-0530

2025 IL App (1st) 240530

SIXTH DIVISION
August 15, 2025

No. 1-24-0530

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JAMIE KAIPUST, as Special Administrator of the Estate of Mark S. Kaipust, Deceased, and Special Administrator of the Estate of Taylor R. Kaipust, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 22 L 10688 |
| v. | ) | |
| | ) | |
| ECHO GLOBAL LOGISTICS, INC., | ) | Honorable |
| | ) | Scott D. McKenna, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Tailor and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1     In this personal injury suit, the circuit court denied defendant Echo Global Logistics, Inc.'s

(Echo), motion to dismiss negligence claims brought by Jamie Kaipust, as special administrator of the

estates of Mark S. Kaipust (Jamie's husband) and Taylor R. Kaipust (her child), on the basis of federal

preemption, but granted Echo's motion to certify two questions on interlocutory appeal per Illinois

Supreme Court Rule 308 (eff. Oct. 1, 2019). The certified questions ask this court to determine whether

1

the Federal Aviation Administration Authorization Act of 1994 (Act) (Pub. L. No. 103-305, 108 Stat. 1569) preempts state law negligent selection claims against trucking brokers, an issue over which there is currently a circuit split among the United States Courts of Appeals. For the reasons below, we hold that the Act preempts negligent selection claims against trucking brokers, but such claims are saved by the statutory exception for laws implicating the "safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A) (2024).

¶ 2                                              BACKGROUND

¶ 3     Jamie filed a complaint on December 1, 2022, alleging in relevant part that Mark and Taylor died when their vehicle collided with a semi-tractor and trailer driven by Yorkwind Crawford on September 4, 2021, in Lincoln, Nebraska. Jamie alleged the trailer was owned by Critical Supply Solutions (CSS), "an authorized interstate motor carrier" and Crawford's employer. Jamie further alleged Echo was "an authorized transportation broker" who had "contracted with CSS to transport the load" in a CSS truck driven by Crawford on that day from Iowa to California. Jamie titled her claim "negligent selection of an independent contractor."

¶ 4     Echo moved to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2022)), arguing that Jamie's state law negligence claims were preempted by the Act. Specifically, Echo cited 49 U.S.C. § 14501(c)(1) (hereinafter the preemption clause), which states in relevant part that a State may not "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier *** or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." Echo contended that because the negligent selection claims constituted state enforcement of a law that was "related to" its "service," the Act expressly preempted the claim.

¶ 5     Jamie responded to Echo's motion, arguing her claims were not preempted because the preemption clause applied only to economic regulations, personal injury liability did not "significantly

affect a broker's services," and a statutory exception in the Act permitted states to enforce laws that implicated the "safety regulatory authority of a State with respect to motor vehicles." See *id.* § 14501(c)(2)(a) (hereinafter the safety exception). Jamie cited *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020), as a "watershed" case where the Ninth Circuit ruled negligent selection claims were saved from preemption by the safety exception.

¶ 6    In Echo's reply, it cited *Aspen American Insurance Co. v Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023), from the Eleventh Circuit, which found negligent selection claims were covered by the preemption clause but not rescued by the safety exception. Echo later cited *Ying Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453 (7th Cir. 2023), where the Seventh Circuit arrived at the same conclusion.[1]

¶ 7    On November 13, 2023, the circuit court denied Echo's motion to dismiss. The court explained that based on *Ye* and *Miller*, "negligent hiring claims do fall within the purview of [Act] preemption," but the safety exception applied, meaning the Act did not preempt Jamie's negligent selection claim. The court believed that *Miller* was "better reasoned" than *Ye*, and challenged the *Ye* court's conclusion that the relationship between trucking broker's services and motor vehicle safety was "indirect," contending the proposition did "not make sense" because the "entire purpose of a broker is to arrange for the carriage of goods by motor vehicles," and the *Ye* court interpreted the phrase "with respect to motor vehicles" too narrowly.

¶ 8    Echo moved for reconsideration or to certify questions for interlocutory appeal pursuant to Rule 308. Jamie opposed the motion.

¶ 9    On February 13, 2024, the circuit court denied Echo's motion to reconsider, but granted its motion to certify the following questions: (1) "Does the Federal Aviation Administration

---

[1]This court need not defer to the Seventh Circuit's holding in *Ye*. See *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶¶ 53-54.

Authorization Act, 49 U.S.C. 14501(c)(1), pre-empt claims for negligent hiring/selection against a broker in a common-law personal injury suit?" and (2) "If the answer to [1] is in the affirmative, does the "safety exception" in 49 U.S.C. 14501(c)(2) apply to negligent hiring/selection claims against a broker in a common-law personal injury suit?"

¶ 10    Echo then filed an application for leave to appeal, which this court granted on May 8, 2024.

¶ 11                                JURISDICTION

¶ 12    The circuit court granted Echo's motion to certify questions, and this court subsequently granted Echo's petition for leave to appeal, giving this court jurisdiction pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019).

¶ 13                                  ANALYSIS

¶ 14    On this appeal, we consider only the two certified questions. The first question is a threshold issue, meaning if we answer in the negative, we do not reach the second. Certified question review under Rule 308 exclusively involves questions of law, so our review is *de novo*. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 15        Question 1: Does the Federal Aviation Administration Authorization Act,

                49 U.S.C. § 14501(c)(1) (2024), Preempt Claims for Negligent Hiring/

                  Selection Against a Broker in a Common-Law Personal Injury Suit?

¶ 16    The preemption doctrine stems from the supremacy clause of United States Constitution, which states that federal law " 'shall be the supreme Law of the Land ***, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' " *Haage v. Zavala*, 2021 IL 125918, ¶ 72 (quoting U.S. Const., art. VI, cl. 2). There are three circumstances where federal law will preempt state law, with the one at issue here known as "express preemption." *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 39. In express preemption cases, "Congress has superseded state legislation by statute," and the reviewing courts task is to identify the scope of that preemption. *Dan's City Used Cars, Inc. v. Pelkey*,

569 U.S. 251, 260 (2013).

¶ 17    Illinois courts interpret the intended scope of a federal statute's express preemption clause consistent with the general rules of statutory interpretation, meaning the court will " 'in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' " *Haage*, 2021 IL 125918, ¶ 72 (quoting *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). When the legislature's intent is clear from the plain language of a provision, given its ordinary meaning, a court has no occasion to resort to the tools of statutory construction and will apply the statute as written. *Miller v. Department of Agriculture*, 2024 IL 128508, ¶ 29.

¶ 18    The Act states in relevant part, "a State *** may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier *** or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). In this context, "related to" means the state law has a connection with or reference to a service, and the law may have just an indirect effect on the service. *Ye*, 74 F.4th at 458 (citing *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008)).

¶ 19    We hold that the preemption clause, given its plain and ordinary meaning, preempts state law negligence claims for negligent selection against trucking broker services. The primary "service" a trucking broker provides is the selection of a trucking company to transport the load at issue. Thus, claims based on how the broker performed that task are necessarily "related to" the "service" of a trucking broker. See *id.* Beyond having a "connection" or "reference" to a service, or an "indirect effect[ ]" thereon, negligent selection claims arise directly from a broker's service, bringing such claims "comfortably" under the preemption clause. (Internal quotation marks omitted.) *Ye*, 74 F.4th at 458-59 (citing *Rowe*, 552 U.S. at 370, and *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-82 (2014)). We note that while not binding on this court, the three United States Courts of Appeals that have considered this

issue have all reached the same conclusion. See *Miller*, 976 F.3d at 1024; *Aspen*, 65 F.4th at 1267-68; *Ye*, 74 F.4th at 459.

¶ 20     Jamie argues the Act's legislative history reveals the underlying intent of Congress was to only preempt inconsistent economic regulations from state to state, not safety-related state laws like negligence claims. See *Miller*, 976 F.3d at 1026. This argument is unavailing, however, because the statutory language of the preemption clause is clear on its face that it applies to a trucking broker's services. In such a scenario, the reviewing court has no occasion to consider the legislative history or other tools of statutory construction and instead must apply the language as written. See *State Farm Fire & Casualty Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 36-37 (2016); *Miller*, 2024 IL 128508, ¶ 29. Accordingly, though Jamie's characterization of the Act's general legislative history may be accurate, it does not affect the resolution of the first certified question.

¶ 21     Next, Jamie argues that this court should apply the general presumption against preemption to hold that negligence claims are not preempted by the Act, citing *City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 432 (2002). This argument also does not apply in this context, however, as the general presumption against preemption is only at issue in the absence of an express preemption clause. *Commonwealth of Puerto Rico v. Franklin California Tax-Free Trust*, 579 U.S. 115, 125 (2016) (when a statute contains an express preemption clause, the court does "not invoke any presumption against preemption").

¶ 22     Jamie also argues that the exercise of reasonable care should not be considered a "service," and thus state negligence law, and its requirement that actors conduct themselves with reasonable care, is distinct from any "service" referenced in the preemption clause. This argument fails because the exercise of reasonable care is not a distinct behavior separate from a defendant's complained-of conduct in a negligence case. Instead, whether a defendant exercised reasonable care is a factual issue a fact finder must determine in analyzing how the defendant performed the complained-of conduct.

Here, that conduct is a trucking broker's core service—the manner in which it paired a motor carrier with a shipper's load. Thus, the state's common law as applied in negligent selection claims necessarily seeks to regulate a trucking broker's service, and the preemption clause applies.

¶ 23    Before turning to the second question, we acknowledge Jamie's citation of the Third Circuit case of *Bedoya v. American Eagle Express Inc.*, 914 F.3d 812 (3d Cir. 2019), which she claims provides a seven-factor test for determining if a state law is "related to" a broker's service that this court should apply because the "general common law of negligence" does not expressly refer to brokers. We have no occasion to engage in this exercise, even conceding Jamie's reading of *Bedoya*, because Jamie's argument is based on a flawed premise. While the general common law of negligence may not expressly refer to a trucking broker's service, the claim at issue—negligent selection of a trucking company by a trucking broker—most assuredly does.

¶ 24    Based on the above, we conclude that the Act is clear on its face that negligent selection claims against trucking brokers are preempted under the plain language of 49 U.S.C. § 14501(c)(1), given its ordinary meaning, and thus answer the first certified question in the affirmative.

¶ 25            Question 2: Does the "Safety Exception" in 49 U.S.C. § 14501(c)(2)

                (2024) Apply to Negligent Hiring/Selection Claims Against a

                Broker in a Common-Law Personal Injury Suit?

¶ 26    Having answered the first question in the affirmative, we turn to the second certified question on appeal—are state negligence claims for negligent selection, though preempted, nonetheless cognizable because they fall under the "safety exception" of the Act? The statute reads in relevant part that the preemption clause:

> "[S]hall not restrict the safety regulatory authority of a State with respect to motor vehicles,
>
> the authority of a State to impose highway route controls or limitations based on the size or
>
> weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to

regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]" *Id.* § 14501(c)(2)(A).

¶ 27    The Eleventh Circuit in *Aspen* and Seventh Circuit in *Ye* both found the safety exception does not cover negligent brokering claims. The *Aspen* court found that Florida's negligence law was part of its safety regulatory authority, but the exercise in this context was not " 'with respect to motor vehicles,' " splitting the safety exception language into two separate requirements *Aspen*, 65 F.4th at 1268 (quoting 49 U.S.C. § 14501(c)(2)(A)). It explained, "the phrase 'with respect to motor vehicles' limits the safety exception's application to state laws that have a *direct* relationship to motor vehicles," and so "a claim against a broker is necessarily one step removed from a 'motor vehicle' because the 'definitions make clear that…a broker…and the services it provides have no direct connection to motor vehicles." (Emphasis in original.) *Id.* at 1271-72 (quoting *Miller*, 976 F.3d at 1031 (Fernandez, J., concurring in part and dissenting in part)).

¶ 28    The *Ye* court reached the same conclusion, explaining, "we conclude that Ye's claim fails to satisfy the second half of the safety exception's text" because it is not "with respect to motor vehicles." *Ye*, 74 F.4th at 460. It continued, "the exception requires a direct link between a state's law and motor vehicle safety. And we see no such direct link between negligent hiring claims against brokers and motor vehicle safety." *Id.* It emphasized that the safety exception makes no explicit mention of brokers or broker services, and the language following the safety exception, which references route controls and insurance, suggests the safety exception should be read with a high degree of specificity. *Id.* at 461.

¶ 29    The Ninth Circuit in *Miller*, conversely, held that the phrase "with respect to" was "synonymous" with "relating to," and therefore, the safety exception exempted safety regulations that had either a direct or indirect connection to motor vehicles. *Miller*, 976 F.3d at 1030. In so holding, the court explained that negligent selection claims were "genuinely responsive" to vehicle safety

because though such claims did not "directly regulate[ ] motor vehicles," they did "promote safety on the road." (Internal quotation marks omitted.) *Id.*

¶ 30    As acknowledged to this court by the litigants during briefing, surveys of the decisions across the federal district courts reveal no consensus has emerged in either direction. We find no precedential decision in Illinois exists that this court must follow.

¶ 31    We hold the safety exception applies to negligent selection claims against a trucking broker and thus such claims are saved from preemption. Unlike the first certified question, the statutory language is not clear on its face as to the intent of Congress on this issue. The safety exception does not explain whether it covers state negligence law. We may therefore rely on the tools of statutory construction in determining Congressional intent. See *State ex rel. Raoul v. Elite Staffing, Inc.*, 2024 IL 128763, ¶ 33. Using these tools, we conclude Congress intended to preserve a state's ability to provide for safety on its roadways by maintaining an individual's access to the remedy of a common-law negligence claim following a motor vehicle collision.

¶ 32    First, both the United States Supreme Court and many other courts, including the Illinois Supreme Court, have explained that absent express language in the statute, a court will not interpret a law to extend preemption to infringe a state's police power (which Echo does not contest encompasses common-law negligence claims). See *Columbus*, 536 U.S. at 438; *Haage*, 2021 IL 125918, ¶ 72. Echo again complains that the circuit court and *Miller* both invoked the general presumption against preemption, which was improper in this case where there is an express preemption clause. See *Franklin*, 579 U.S. at 125. But while the general presumption may not apply here, *Franklin* did not address, let alone reverse, long-standing precedent that courts must still interpret express preemption clauses subject to the well-accepted maxim that a court will not find a federal law preempts a state's traditional ability to provide for public safety absent clear statutory directive from Congress. See *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-85 (1996). There is no doubt that the preemption clause by

its express language applies to many areas that do not implicate state police powers, like attempted regulation of the prices brokers charge. But it contains no corresponding directive to preempt provisions for the public safety, and given that absence, courts should defer to the presumption that Congress did not intend such displacement of state law in this area.

¶ 33    Second, it is highly unlikely Congress intended to permit brokers to act as negligently as they see fit, with no redress for an injured party, without making this intent clear on the statute's face. Consider a scenario where a broker has used a motor carrier multiple times in the past, and each time the company assigned a certain driver, that driver caused a collision. If that broker subsequently uses that same company knowing the company will assign that same driver, and another collision occurs, should a plaintiff not even have the ability to seek redress from the broker? Such a result would run counter to the principle that courts should not interpret a law to give an injured plaintiff no recourse. See *Dan's City*, 569 U.S. at 265 (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984)). It would also be an absurd result to interpret the intent of Congress to allow brokers to act as negligently as they want with impunity, and courts will not engage in such interpretations. See *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

¶ 34    Finally, the legislative history demonstrates that Congress designed the Act, like its predecessor in the Airline Deregulation Act of 1978 (ADA), Pub. L. No. 95-504, 92 Stat. 1705, to address inconsistent economic regulations from state to state that made it difficult for companies in the trucking industry to account for the various rules in different states. See *Miller*, 976 F.3d at 1022-23, 1026. These concerns do not apply to the general duty to act with reasonable care. See *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 236-37 (1995) (Stevens, J., concurring) ("[T]he standard of ordinary care is a general background rule against which all individuals order their affairs. Surely Congress did not intend to give airlines free rein to commit negligent acts subject only to the supervision of the Department of Transportation ***.").

¶ 35    The courts that have ruled the opposite way have focused on the phrase "with respect to" in the safety exception. In *Dan's City*, the Supreme Court described the phrase as having a "massively" limiting effect. 569 U.S. at 261. The *Ye* and *Aspen* courts keyed on the "massive limitation" to conclude that negligent selection claims against brokers were too attenuated to be considered "with respect to motor vehicles," as they did not have a "direct" effect on motor vehicles. See generally *Ye*, 74 F.4th 453; *Aspen*, 65 F.4th 1261. The *Ye* court explained that the broker "does not own or operate motor vehicles," meaning an "extra link to connect the alleged chain of events" was required to get from the broker to the driver who caused the collision, and "this additional link goes a bridge too far." *Ye*, 74 F.4th at 461-62. The *Miller* court interpreted this phrasing differently, reasoning that "with respect to" was the functional equivalent of the "related to" language in the preemption clause itself. *Miller*, 976 F.3d at 1030. *Miller* accordingly discounted any reliance on a direct versus indirect effect analysis and instead emphasized that state negligence laws regarding trucking brokers are "genuinely responsive" to safety concerns, per the Supreme Court's guidance in *Columbus*. (Internal quotation marks omitted.) *Id.*

¶ 36    We reject the reasoning from *Ye* and other courts that reached the same conclusion. The safety exception uses the full phrase "safety regulatory authority with respect to motor vehicles," meaning the question is not whether a regulation has a direct or indirect relationship with respect to motor vehicles alone, but a direct or indirect relationship with the *safety* of motor vehicles. Using this interpretation to consider the full breadth of the safety exception, negligent selection claims are sufficiently responsive to safety concerns to satisfy any directness standard. Though the brokers themselves do not employ the drivers or own the trucks, they are directly responsible for the presence of a truck on a road within the state. If the broker did not perform its service, then the trucking company would not have provided the truck and driver to haul the load in question. Given these realities, there is no gap between the service the broker provides and the presence of the truck (the motor vehicle) on the

State's roads. In this court's estimation, application of that State's negligence laws to that truck is as direct a connection as there could be between a motor vehicle regulation and public safety. See *Milne v. Move Freight Trucking, LLC*, No. 7:23-cv-432, 2024 WL 762373, *8 (W.D. Va. Feb. 20, 2024) ("State law recognizes these tort claims in part to incentivize safe practices in the trucking industry. To preempt such claims would undercut an important tool in the states' efforts to maintain reasonably safe roadways, a practice expressly shielded by the safety [exception].").

¶ 37   Echo and its amici argue that this interpretation of the safety clause renders trucking brokers "*de facto* insurers," or imposes on the brokers responsibility for the conduct of motor carries and drivers. We disagree because the fact that the safety exception makes negligent selection claims cognizable does not constitute a factual finding in any specific case that the broker had the responsibility or ability to control the carrier or driver's conduct or a define a broker's standard of care; instead, of course, it merely subjects the broker to liability if a plaintiff can establish that the broker's conduct was negligent in the context of that particular case.

¶ 38   The *amici* argue that the Federal Motor Carrier Safety Administration (FMCSA) is "charged with making safety determinations," and the applicable regulations maintain that carriers are responsible for the conduct of their drivers, as support for their position. But neither Echo nor the *amici* provide any reference, in the regulations or the Act or anywhere else, to rules absolving brokers from the duty to act reasonably or adopting the stance that brokers are incapable of negligence. See *Wolens*, 513 U.S. at 236-37 (Stevens, J., concurring). Echo and its *amici* start from the standpoint that they are immune from responsibility for their own negligence, and it would take an act of Congress to lift that immunity. Without any authority backing this unique stance, we cannot adopt this position. While we agree with the *amici* that freight brokers are not insurers of motor carriers, nor are they responsible for performing the FMCSA's regulatory functions, we cannot agree that they are inherently absolved from their own negligent conduct.

¶ 39    The concerns of Echo and its *amici* are more akin to responses to an argument on summary judgment challenging a plaintiff's evidence on proximate cause, not whether negligent selection claims are expressly preempted by the Act. That the brokers may not hire the drivers or operate the trucks themselves are potentially valid arguments to raise against proximate cause. But this does not fundamentally alter the nature of a negligent selection claim as arising from the state's regulatory authority, exercised through the common law, to ensure motor vehicles are safely operated within its borders. While it may be a high evidentiary burden for a plaintiff to establish such claims, in instances when the record permits a negligence claim to survive a motion to dismiss or summary judgment, the statute contains no provision from which we could conclude Congress intended nonetheless to indemnify the broker.

¶ 40    Echo claims that the circuit court erred by finding the phrase "with respect to" had no functional difference from the term "related to" in the preemption clause. On this point, we agree with Echo, but it does not require reversal on *de novo* review. The circuit court, echoing *Miller*, maintained that "related to" and "with respect to" were essentially synonymous, but this interpretation runs counter to the rule that different phrases employed so close together in a statute suggest Congress intended some difference in meaning. See *People v. Begay*, 2018 IL App (1st) 150446, ¶ 48. Where we disagree with Echo, and *Ye* and *Aspen*, is that we conclude the application of state law negligent selection claims fall under "the safety regulatory authority of a State 'with respect to' motor vehicles" under even the "massively limit[ed]" understanding of "with respect to" as characterized in *Dan's City*, 569 U.S. at 261.

¶ 41    Echo next argues that because the preemption clause explicitly lists "brokers," while the safety exception does not, we should read this exclusion as exempting brokers from the safety exception under the statutory interpretation canon that "when Congress includes particular language in one section of a statute but omits it in another," that omission is purposeful. (Internal quotation marks omitted.)

See *Maine Community Health Options v. United States*, 590 U.S. 296, 314 (2020)). The *Ye* court used a similar rationale. See *Ye*, 74 F.4th at 461-62.

¶ 42    We reject this reasoning because the rule of interpretation does not apply in this instance. Instead, it is clear from the plain language of 49 U.S.C. § 14501(c)(2)(A) that Congress did not purposefully omit certain parties to exclude them from the safety exception; it omitted *any reference* to *any parties* because the exception applies to the conduct of *anyone*, so long as such conduct falls under the "safety regulatory authority of a State with respect to motor vehicles." The safety regulatory authority of a state encompasses broader conduct than just that referenced in the preemption clause, and thus the absence of "brokers" or any other set of actors in the exception does not limit the safety exception's application to any particular set of actors.

¶ 43    Echo argues that an interpretation that includes broker services in the safety exception would be so broad as to obviate the other exceptions listed in 49 U.S.C. § 14501(c)(2)(A), violating the statutory interpretation maxim of not interpreting a law to render passages meaningless or redundant. See *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (opinion of O'Connor, J., joined by Rehnquist, C.J., and Kennedy, Thomas, and Scalia, JJ.). The other exceptions are "the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo" and the "the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization." 49 U.S.C. § 14501(c)(2)(A).

¶ 44    This argument fails because while there may be room to interpret the subsequently listed exceptions as touching on safety, the regulation of safety and the regulation of these subjects by the enumerated exceptions are sufficiently distinct. Specifically, the areas covered in both subsequent exceptions have obvious economic aspects, which distinguishes each area from that conduct regulated under a state's safety regulatory authority. Accordingly, to the extent there is overlap

14

between the safety exception and the subsequent exceptions, this overlap does not render the additional exceptions superfluous. See *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Redundancy is not a silver bullet," meaning, "[s]ometimes the better overall reading of the statute contains some redundancy.").

¶ 45 Finally, we reject Echo's argument that interpretating the safety exception to protect state negligence claims against brokers would lead to the safety exception "swallowing" the preemption clause itself. The preemption clause's application to attempted economic regulation of broker conduct unrelated to safety is left untouched by this ruling. Only when a plaintiff can establish that the broker's conduct implicated the state's safety regulatory authority will a claim survive preemption per the present ruling. This regime allows the Act to prevent states from enacting inconsistent economic regulations of the trucking broker industry, while preserving the state's ability to regulate when protecting the safety of its residents, the underlying intent of the ADA and the Act.

¶ 46                                    CONCLUSION

¶ 47 The Act preempts state law negligence claims against a trucking broker for negligent selection, but such claims are protected by the safety exception to Act preemption. The answer to both certified questions is "Yes."

¶ 48 Certified question answered; cause remanded.

*Kaipust v. Echo Global Logistics, Inc.*, 2025 IL App (1st) 240530

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-10688; the Hon. Scott D. McKenna, Judge, presiding. |
| **Attorneys for Appellant:** | Timothy S. McGovern, of Floyd Zadkovich (US) LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Timothy M. Whiting, of Whiting Law Group, Ltd., of Chicago, Darrin M. Walker, of Law Office of Darrin Walker, of Kingwood, Texas, Eric T. Penn, of Penn Law Firm, of Jacksonville, Texas, and Peter John Kestner and Mary Ellen Eliasen, of Penn, Kestner & McEwen, PLLC, of Inver Grove, Minnesota, for appellee. |
| *Amicus Curiae*: | Bradley Albert Bertkau and Sophia Marcella Rago, of Canty Novy Bertkau Gordon, LLC, of Chicago, for *amici curiae* C.H. Robinson Worldwide, Inc., *et al.* |
| | Matthew J. Belcher, of Aleksy Belcher, LLC, of Chicago, for *amicus curiae* for Institute for Safer Trucking. |