2025 IL App (2d) 240164
No. 2-24-0164
Opinion filed August 26, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| GREGORY AMATO, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 23-MR-46 |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY; THE BOARD OF REVIEW OF | ) | |
| THE DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, and THE DIRECTOR OF | ) | |
| EMPLOYMENT SECURITY, | ) | Honorable |
| | ) | Joel D. Berg, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    *Pro se* plaintiff, Gregory Amato, appeals the judgment of the circuit court of McHenry County denying his complaint for administrative review and affirming an order of defendant the Board of Review of the Department of Employment Security (Board). The Board (1) found that plaintiff had received Pandemic Unemployment Assistance (PUA) benefits for which he was ineligible under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (15 U.S.C. § 9001 *et seq.* (Supp. II 2018)) and (2) denied his request to waive recoupment of the benefits. For the following reasons, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3      Congress passed the CARES Act in early 2020 to provide relief during the COVID-19 pandicle. *Bayview Loan Servicing, LLC v. Starks*, 2022 IL App (2d) 210056, ¶ 25. The CARES Act established, *inter alia*, "a cooperative program funded by the federal government and administered by the states to extend and expand unemployment insurance." *D'Agostino v. Arizona Department of Economic Security*, 623 F. Supp. 3d 1009, 1011 (D. Ariz. 2022). The benefit programs created by the CARES Act expired on September 6, 2021. *Id.* During the programs' duration, PUA benefits were provided to individuals who did not qualify for regular or extended unemployment compensation under federal or state law, including individuals who had exhausted their rights to regular or extended unemployment benefits under federal or state law. 15 U.S.C. § 9021(a)(3)(A)(i) (Supp. II 2018). The CARES Act has a recoupment provision for overpaid PUA benefits but permits a waiver of recoupment in certain circumstances. See *id.* § 9021(d)(4).

¶ 4      On March 23, 2023, plaintiff filed his *pro se* complaint for administrative review of a decision by the Board dated February 24, 2023. In its decision, the Board (1) found that plaintiff was paid PUA benefits for which he was not eligible under the CARES Act and (2) denied his request to waive repayment of the benefits.

¶ 5      Plaintiff attached to his complaint an unsworn statement giving his reasons for opposing the Board's decision. He stated that he filed for PUA benefits in 2020, after Rock Valley Community College (Rock Valley)[1] in Rockford closed in mid-March 2020, due to the pandemic. Plaintiff had worked there for less than a week. Plaintiff stated that he received $20,000 in PUA

_____

[1]Plaintiff's employer during this period is alternatively referred to as Consolidated Curriculum or Condensed Curriculum.

benefits but that defendant the Department of Employment Security (Department) later informed him that he was ineligible for the benefits and would have to return the funds. Plaintiff appealed the decision, but ultimately the Board denied him relief. Plaintiff alleged that denying him a recoupment waiver would cause him financial hardship because he was 72 years old, had diabetes, received income of only $2,400 per month (he did not indicate the source(s)), and was on medications, one of which cost $576 per month.

¶ 6     Defendants filed an answer, with attached copies of documents and transcripts relating to the history of the proceeding. Thereafter, plaintiff filed additional documents with the trial court, including various correspondence relating to his receipt of PUA benefits and the Department's later demand that he repay the benefits. He also submitted several additional unsworn statements. He claimed that he had filed for PUA benefits because he believed he was eligible for them. He stated that he had been diagnosed with cancer, that one of his medications cost $250 to $300 per month, and that his only income was social security payments of $2,100 per month (which he substantiated with a payment statement) because he had difficulty finding work.

¶ 7     While we acknowledge that the Department dispensed PUA benefits to plaintiff and afterward found them unauthorized, the Department's correspondence to plaintiff appears to shift more than once between approval and disapproval of the benefits. The earliest correspondence from the Department is a December 30, 2020, letter informing plaintiff that, from March 2020 to December 2020, he had received $19,722 in PUA benefits for which he was not eligible. The Department stated that plaintiff must repay the entire amount.

¶ 8     Confusingly, the next correspondence from the Department to plaintiff is a "Reconsidered PUA Finding," dated February 3, 2021. The document purported to be an "updated statement because of new or corrected wage information." The Department informed plaintiff that he was

eligible for $198 per week in PUA benefits for the benefit year starting March 15, 2020, and ending April 10, 2021, as long as he "[met] the PUA requirements." The Department noted that plaintiff had filed for PUA benefits on May 11, 2020, and that his maximum total benefit was $11,286, based on a maximum benefit period of 57 weeks.

¶ 9 On its face, the February 3, 2021, correspondence appears to indicate that the Department had reconsidered its December 30, 2020, determination and found that plaintiff was eligible for *some* of the $19,722 in PUA benefits paid from March 2020 to December 2020. However, as we will note, subsequent communications from the Department make clear that either (1) the Department later reconsidered the February 3, 2021, reconsideration or (2) the February 3, 2021, letter was a miscommunication and the Department had never reconsidered the December 30, 2020, determination.

¶ 10 On March 4, 2021, plaintiff filed a "Request for Waiver of Recovery of PUA Overpayment."

¶ 11 On May 27, 2021, the Department sent plaintiff a denial of his request that the Department waive its recoupment order. The Department explained: "You do not meet the requirements to have recovery of your overpayment waived because the overpayment was not due to no fault of your own." In denying the waiver, the Department cited two authorities. The first was the Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, 134 Stat. 1182, which amended the recoupment provision in section 2102(d)(4) of the CARES Act (15 U.S.C. § 9021(d)(4)). Under that section, a state agency "may waive *** repayment if it determines that *** the payment of *** [PUA benefits] was without fault on the part of [the] individual; and *** such repayment would be contrary to equity and good conscience." *Id.* The second cited authority was section 900(A)(2) of the Unemployment Insurance Act (820 ILCS 405/900(A)(2) (West

2020)), which provides that "[r]ecoupment *** may be waived upon the individual's request, if the sum *** was received by the individual without fault on his part and if such recoupment would be against equity and good conscience."

¶ 12    On August 11, 2021, the Department reaffirmed its denial of plaintiff's request for a recoupment waiver.

¶ 13    Plaintiff appealed. In September 2022, the Department issued an acknowledgement of his appeal and noted: "[PUA] benefits are denied *from 03/15/2020 to 09/04/2021*." (Emphasis added.) This finding was consistent with the December 30, 2020, determination and inconsistent with the February 3, 2021, redetermination.

¶ 14    On October 17, 2022, a Department referee held a telephone hearing, at which plaintiff was the sole witness.

¶ 15    At the beginning of the hearing, the referee explained to plaintiff that he had been ruled ineligible for PUA benefits because he had not filed for regular unemployment benefits before applying for PUA benefits. The referee then examined plaintiff.

¶ 16    Plaintiff testified that he applied for PUA benefits on May 11, 2020. At that time, his most recent employment was with Rock Valley, but he worked there only one day before the school closed due to the pandemic. Previously, in 2019, plaintiff worked in Illinois for Randstad Professionals (Randstad) for about six weeks before being laid off. He was paid by a firm in Tennessee but had no other connection with that state. After he was laid off, "[the Department] wouldn't pay him because *** [it] said [he] *** should file for Tennessee unemployment." He filed for Tennessee benefits but did not receive any. Sometime in 2020, plaintiff told the Department that he had filed for Tennessee benefits and sent documents to the Department

explaining the situation. However, the referee noted that no such documents were in the record. Plaintiff responded, "So maybe I didn't send them. I'm not, I don't remember."

¶ 17    The referee then noted that the record did not reflect that plaintiff met the exhaustion requirement for PUA benefits. A "covered individual" is defined as follows under section 2102(a)(3)(A)(i) of the CARES Act (15 U.S.C. § 9021(a)(3)(A)(i)):

"(a) Definitions

* * *

(3) Covered individual

The term 'covered individual'—

(A) Means an individual who—

(i) is not eligible for regular compensation or extended benefits under State or Federal law *** including an individual who has *exhausted all rights to regular unemployment or extended benefits under State or Federal law*[.]" (Emphasis added.)

¶ 18    The referee noted that the record did not show that plaintiff, after losing his Rock Valley job, filed a claim for regular Illinois unemployment benefits *before* applying for PUA benefits. Plaintiff replied, "Well, that would make sense to me because I wasn't getting anything from Illinois. I was *** filing with Tennessee *** and they wouldn't pay me." The referee explained that plaintiff had not followed the law: since he "had qualifying state wages," he could not immediately file for PUA benefits. Rather, to be eligible for PUA benefits, he had to "file for regular unemployment benefits, first, get the denial, and then file for pandemic [unemployment benefits]." The referee recommended that plaintiff file an amended request to waive the recoupment.

¶ 19    On October 25, 2022, the referee issued her decision affirming the Department's decision. The referee included these factual findings and legal conclusions:

"[Plaintiff] is an Illinois resident who was employed by a Tennessee company from 09/13/2019 until late October 2019. In March 2020[,] [plaintiff] entered into an agreement for employment with Condensed Curriculum to begin employment. [Plaintiff] worked one day and was laid-off due to Covid-19 closures. Several months later, [plaintiff] filed for PUA benefits in Illinois. [Plaintiff] admits he had W-2 wages but was unaware that he should file for regular Illinois [unemployment insurance] benefits. [Plaintiff's] actions have resulted in an overpayment."

***

Based upon the preponderance of the evidence presented at [the] hearing, [plaintiff] failed to seek information regarding the filing of [a] regular [unemployment insurance] claim for benefits and[/]or [a] PUA claim for benefits."

¶ 20    Plaintiff appealed to the Board. On February 24, 2023, the Board affirmed the referee's decision. The Board included the following factual background:

"The record discloses that [plaintiff] filed a claim for [PUA] benefits on May 11, 2020[,] with an effective date of March 15, 2020.

[Plaintiff] was employed by an employer as [a] teacher at a community college. [Plaintiff] worked one day before the employer closed in March due to the pandemic. [Plaintiff] prior to working as [a] teacher worked for an employer from September 3, 2019[,] until being separated six weeks later. [Plaintiff] as a result of working approximately six weeks had Tennessee wages.

[Plaintiff] due to his separation in 2019 and in his separation in March of 2020 did not file a claim for regular benefits in the State of Tennessee but instead filed a claim for [PUA] benefits."[2]

The Board determined that the record "support[ed] a finding that [plaintiff] failed to exhaust all rights to regular benefits as well as Pandemic Emergency Unemployment Compensation (PEUC)."[3] "Therefore," the Board continued, the record "further support[ed] a finding that [plaintiff] was not entitled to a waiver of the overpayment because the overpayment was not due to no fault of [plaintiff]." The Board cited the CARES Act and the Unemployment Insurance Act.

¶ 21 Plaintiff then filed his complaint for administrative review. He reiterated his earlier arguments. Defendants responded first that plaintiff failed to exhaust his rights to regular or extended unemployment benefits and, therefore, was not eligible for PUA benefits. See 15 U.S.C. § 9021(a)(3)(A)(i).

¶ 22 Defendants responded second that, under section 900(A)(2) of the Unemployment Insurance Act, plaintiff could not claim a waiver of the recoupment because the payment of unauthorized benefits was not "without fault on his part." 820 ILCS 405/900(A)(2) (West 2020). Defendants noted that section 2835.40 of the Illinois Administrative Code (Administrative Code)

---

[2]Plaintiff presented the Board with documentation he had not presented to the referee, but the Board declined to consider it.

[3]PEUC benefits (see 15 U.S.C. § 9025 (Supp. II 2018)) are a form of *extended* federal unemployment coverage (*D'Agostino*, 623 F. Supp. 3d at 1011) and, as such, are distinct from PUA benefits, which can be obtained only if the individual is not qualified for, or has exhausted his rights to, regular *or* extended unemployment compensation under state *or* federal law. See 15 U.S.C. § 9021(a)(3)(A)(i).

(56 Ill. Adm. Code 2835.40, adopted at 8 Ill. Reg. 15,032 (eff. Oct. 1, 1983)) elaborates on the concept of fault: "The receipt of any sum paid to a claimant as benefits, due to agency error, is without fault. A good faith mistake of fact by the claimant in the filing of his claim for benefits which results in an overpayment of benefits does not constitute fault." Defendants argued that plaintiff had not been without fault, because he made a mistake of law, not a mistake of fact, in neglecting to follow the CARES Act's exhaustion requirement.

¶ 23    The trial court agreed with defendants that, under the plain meaning of the CARES Act, the Board ruled correctly that plaintiff was ineligible for PUA benefits, as the record did not show that he had exhausted his rights to regular or extended unemployment benefits under Illinois law. The court also agreed with defendants that the CARES Act, the Unemployment Insurance Act, and the Department's regulations precluded a recoupment waiver. The court found that plaintiff made a "legal mistake," not a "factual mistake," in that he "did not follow the clear statute." Plaintiff timely appealed.

¶ 24                                II. ANALYSIS

¶ 25    On appeal, plaintiff argues that the Board erred by denying him a recoupment waiver. We agree. We hold that (1) the payment of PUA benefits was without fault on plaintiff's part and (2) recoupment of the benefits would be contrary to equity and good conscience.

¶ 26    We review the final decision of the administrative agency, not the trial court's judgment. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 18. Broadly, we may disturb the agency's decision only if (1) the agency's findings of fact were against the manifest weight of the evidence, (2) the agency made a mistake of law, or (3) the agency's application of the law to the facts was clearly erroneous. See *Marathon Petroleum Co. v. Cook County Department of Revenue*, 2024 IL 129562, ¶¶ 32-33. Our analysis turns in part on questions

of statutory interpretation, which we review *de novo*. *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 21. "When a statute is ambiguous, a court gives substantial weight and deference to the agency charged with administering and enforcing that statute." *Miller v. Department of Agriculture*, 2024 IL 128508, ¶ 30.

¶ 27                                    A. "Without Fault"

¶ 28    We begin by noting that our resources for resolving the recoupment issue are not limited to the governing statutes, administrative regulations, and case law construing them. Rather, the United States Department of Labor (USDL) "has provided guidance to the states for administering the PUA program in a series of Unemployment Insurance Program Letters." *Martin v. Department of Workforce Services*, 2022 UT App 32, ¶ 6, 507 P.3d 847. Some courts have held that the federal program letters are not binding on state courts. See *Thompson v. Special School District of St. Louis County*, 663 S.W.3d 493, 499-500 (Mo. Ct. App. 2023); *University of Rhode Island v. Department of Employment & Training*, 691 A.2d 552, 555 (R.I. 1997). However, states, like Illinois, that have entered into agreements to carry out the PUA program—which is 100% federally funded—are required to follow the CARES Act and the USDL's guidance. See U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 14-21, Change 1, at 2-3 (July 12, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/ 2021/UIPL_14-21-Change_1.pdf [https://perma.cc/2Y37-RUSV]; U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 16-20, Change 5, at 2 (Feb. 25, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/ UIPL_16-20_Change_5.pdf [https://perma.cc/TX99-S7Y7]. Some of the USDL's guidance presents itself as mere suggestion, but to the extent it is presented as mandatory, we consider ourselves bound by it.

¶ 29    The overarching criteria for waiving recoupment are in section 2102(d)(4) of the CARES Act, which states:

"In the case of individuals who have received amounts of [PUA] to which they were not entitled, the State *shall* require such individuals to repay the amounts of such [PUA] to the State agency, except that the State agency *may* waive such repayment if it determines that—

(A) The payment of such [PUA] was without fault on the part of any such individual; and

(B) such repayment would be contrary to equity and good conscience."

(Emphases added.) 15 U.S.C. § 9021(d)(4).

¶ 30    The quoted language is clear. The state agency generally must order recoupment of unauthorized benefits. See *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (use of "shall" implies nondiscretionary obligation). The statute carves out a limited scenario in which recoupment *may*— not *must*—be waived, but there are two preconditions: (1) the payment of the unauthorized benefits was "without fault on the part of [the] individual" and (2) repayment of the unauthorized benefits "would be contrary to equity and good conscience." Whether to grant a waiver is a matter of discretion for the state agency. See U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 20-21, at 6 (May 5, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_20-21.pdf [https://perma.cc/7QP2-KVGH] (last visited July 11, 2025) ("It is a matter of state discretion whether to exercise [the] waiver authority."); *Morgan v. Labor & Industry Review Comm'n*, 2024 WI App 39, ¶ 19, 413 Wis. 2d 42, 10 N.W.3d 414.

¶ 31    Moreover, "[s]tate law determines when an individual is considered to not be at fault for the overpayment." U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 20-21, at 6 (May 5, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_20-21.pdf [https://perma.cc/7QP2-KVGH]; *Morgan*, 2024 WI App 39, ¶ 20. Nonetheless, the USDL has furnished the following guidance for states in determining whether an individual was at fault in receiving unauthorized benefits:

> "Without fault means the state has determined the individual had no fault with respect to a given week of unemployment which is determined to be overpaid. Generally, an individual is considered to be without fault when the individual provided all information correctly as requested by the state, but the state failed to take appropriate action with that information or took delayed action when determining eligibility.

> When looking at eligibility to waive recovery on an individual, case-by-case basis, the state may also find that an individual is without fault if the individual provided incorrect information due to conflicting, changing, or confusing information or instructions from the state; the individual was unable to reach the state despite their best efforts to inquire or clarify what information the individual needed to provide; or other similar difficulties (*e.g.*, education, literacy, and/or language barriers) in understanding what information the state needed from the individual to properly determine eligibility for the CARES Act UC programs. In determining if the individual is without fault under these circumstances, some examples of what states might review include verbal or written statements from the individual explaining the confusion they experienced or screenshots of the application questions at the time the individual submitted their original information. *Finding an*

*individual to be without fault under these circumstances is fact-specific and must be done on a case-by-case basis.*

*While many non-fraud overpayments scenarios may be categorized as without fault, states may not categorically equate non-fraud overpayments as being made without fault on the part of an individual. Not all non-fraud overpayments are without fault on the part of the individual.*" (Emphases added.) U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 20-21, Change 1, at 9-10 (Feb. 7, 2022), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2022/ UIPL_20-21_Change_1.pdf [https://perma.cc/X9WM-4DFY].

¶ 32    Two aspects of this guidance are couched as express requirements: (1) the issue of fault must be considered on a case-by-case basis and (2) nonfraud payments cannot be equated categorically with no-fault overpayments. Illinois law is consistent with these.

¶ 33    The Illinois statutory recoupment provision, section 900(A)(2) of the Unemployment Act, provides that a recoupment waiver may be granted "if the sum *** was received by the individual without fault on his part and if such recoupment would be against equity and good conscience." 820 ILCS 405/900(A)(2) (West 2020). Section 2835.40 of the Administrative Code elaborates on "without fault": "The receipt of any sum paid to a claimant as benefits, due to agency error, is without fault. A good faith mistake of fact by the claimant in the filing of his claim for benefits which results in an overpayment of benefits does not constitute fault." 56 Ill. Adm. Code 2835.40, adopted at 8 Ill. Reg. 15,032 (eff. Oct. 1, 1983).

¶ 34    These Illinois statutory provisions on recoupment waivers, consistent with the USDL guidance, leave the propriety of a waiver to be determined on a case-by-case basis and allow an overpayment without fraud to nonetheless be deemed not without fault on the claimant's part.

¶ 35    The Department's position on appeal is that, in applying for and receiving PUA benefits to which he was not entitled, plaintiff was *ipso facto* at "fault." The Department ignores its own fault in paying the benefits, even though it quotes the relevant text ("[t]he receipt of any sum paid to a claimant as benefits, due to agency error, is without fault" (*id.*)) and essentially concedes that plaintiff made no false statements in his application for the benefits. Instead, the Department concentrates on what it deems plaintiff's fault in applying for the benefits. According to the Department, plaintiff made a mistake of law, not of fact, by "misapprehend[ing] his eligibility for PUA benefits" and "applying for [those] benefits without first applying for or exhausting regular unemployment benefits." The Department implicitly operates under a "dual fault" theory: although *receiving* benefits due to "agency error" was not of itself plaintiff's fault, plaintiff *was* at fault in *applying* for the benefits and, therefore, cannot meet the "without fault" element, regardless of the Department's contributing fault.

¶ 36    To evaluate the Department's contention that plaintiff was properly found at "fault" in applying for PUA benefits, we examine the operative language of the CARES Act. As noted, a "covered individual" under section 2102(a)(3)(A)(i) of the CARES Act is one who "is not eligible for regular compensation or extended benefits under State or Federal law *** including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law." 15 U.S.C. § 9021(a)(3)(A)(i). PUA benefits shall be paid to "any covered individual *** while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation." *Id.* § 9021(b).

¶ 37    If, as the Department contends, plaintiff was at "fault" for "misapprehend[ing] his eligibility for PUA benefits," then the record should contain a finding that plaintiff *was not* eligible

for PUA benefits—otherwise, the finding of "fault" is not supported. In accord with section 2102(a)(3)(A)(i) of the CARES Act, that finding of non-eligibility would have to be that plaintiff (1) did not "exhaust[ ] all rights to regular unemployment or extended benefits under State or Federal law" or (2) was otherwise not eligible for regular or extended unemployment benefits under state or federal law. *Id.* § 9021(a)(3)(A)(i). In her decision, the hearings referee found that plaintiff had "W-2 wages," which the referee did not quantify, and, in its decision, the Board found that plaintiff had two "separations"—from Illinois and Tennessee employers, respectively. The Board concluded that plaintiff "failed to exhaust all rights" to regular unemployment compensation. But neither the hearings referee nor the Board explained how the sheer fact that plaintiff had "W-2 wages" and "separations" meant that he had unexhausted "rights" to regular unemployment compensation. In Illinois, to qualify for regular unemployment compensation, the applicant must have earned certain minimum level of wages during the base period. See 820 ILCS 405/500(E) (West 2020); *Castillo v. Jackson*, 207 Ill. App. 3d 799, 802 (1990).

¶ 38    The referee's and the Board's passing references to "wages" and "separations" are reminiscent of the USDL's guidance on the processing of claims for PUA benefits:

"Claims for PUA. *In processing claims for PUA, states must verify that individuals have no regular UC entitlement*. If the individual is not eligible for regular UC because there are insufficient covered wages or the individual has an active UC claim with a definite or indefinite disqualification, then a state does not need to require the individual to file a regular UC initial claim. However, the state must have an established process whereby the individual's ineligibility for regular UC is documented on the application.

*If the individual's eligibility for regular UC is questionable (for example, there are wages in the base period, but no claim is filed, or a job separation that has not been*

*adjudicated), then the state must first require the individual to file a regular UI initial claim.* If the individual is subsequently disqualified, then the state may consider the individual for PUA eligibility." (Emphases added.) U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 16-20, Change 4, at I-18 (Jan. 8, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/ UIPL_16-20_Change_4.pdf [https://perma.cc/W8TF-G63M].

¶ 39 Under this guidance, if an applicant for PUA benefits has "questionable" eligibility for regular unemployment compensation because of "wages in the base period" or a "job separation" that has not been the subject of a claim, the state agency must require the applicant to file first for regular unemployment compensation. This guidance is the only resource we have found that provides some insight into why the referee and the Board based the recoupment order on cursory references to "wages" and "separations" without explaining how plaintiff was entitled to regular unemployment compensation under Illinois law.

¶ 40 We stress that the issue here is not the authority of a state agency to make a *post facto* determination of ineligibility for PUA benefits; the question, rather, is when an applicant who did not employ fraud can nonetheless be deemed at "fault" for obtaining benefits such that the harsh remedy of disgorgement is proper. The central premise of the recoupment order is that plaintiff received PUA benefits without meeting the exhaustion requirement of section 2102(a)(3)(A)(i) of the CARES Act. That section, however, requires exhaustion of rights *simpliciter*, not "questionable" or "potential" rights. We stress that there is no room for agency deference on this question of statutory interpretation, as the text is unambiguous. See *Miller*, 2024 IL 128508, ¶ 30. "[N]or may [we] rewrite [the] statute to add provisions or limitations that the legislature did not include." *Village of Lincolnshire v. Olvera*, 2025 IL 130775, ¶ 21. The Department's position is

that plaintiff was at "fault" through his "mistake of law," but plaintiff cannot be deemed mistaken that he had no "rights" to regular unemployment compensation when the referee and the Board did not demonstrate that he indeed had such "rights."

¶ 41　During the duration of the CARES Act programs, a state agency faced with an application for PUA benefits could rely on the applicant's mere "wages" and "separations" to deny him such benefits and require him to file first for regular unemployment, without prejudice to a later PUA application. Such a policy might well have been a prudent safeguard of federal resources in a dire time when many were out of work. However, that authority does not empower the agency to cite mere "wages" and "separations" to make a "fault" determination as a predicate for a recoupment order.

¶ 42　For these reasons, we hold that the Department erred in finding that plaintiff was not "without fault" under section 2102(d)(4) of the CARES Act.

¶ 43　　　　　　　　　　B. "Contrary to Equity and Good Conscience"

¶ 44　We next consider whether ordering recoupment of the PUA benefits would be "contrary to equity and good conscience." 15 U.S.C. § 9021(d)(4)(B). Under USDL guidance, state law determines when recoupment would be "contrary to equity and good conscience." U.S. Dep't of Lab., Emp. & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 20-21, Change 1, at 10 (Feb. 7, 2022), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2022/UIPL_20-21_Change_1.pdf [https://perma.cc/X9WM-4DFY]. As noted, the Unemployment Insurance Act employs the identical language in its recoupment provision. See 820 ILCS 405/900(A)(2) (West 2020) ("Recoupment *** may be waived upon the individual's request, if the sum *** was received by the individual without fault on his part and if such recoupment would

be against equity and good conscience."). The Administrative Code contains a provision specifically on recoupment of PUA benefits:

"a) The Department will waive recovery of any overpayment under the Pandemic Unemployment Assistance (PUA) *** program[ ] *** paid to a recipient if the Department determines that:

1) The overpayment was without fault on the part of the recipient; and

2) Recovery would be contrary to equity and good conscience.

b) For purposes of subsection (a), recovery of the overpayment will be considered to be against equity and good conscience if:

1) It would cause financial hardship to the person from whom it is sought;

2) Regardless of the recipient's financial circumstances, the recipient can show that, based on the overpayment or notice that a benefit payment would be made, the recipient has:

A) relinquished a valuable right; or

B) changed positions for the worse; or

3) Recovery would be unconscionable under the circumstances." 56 Ill. Adm. Code 2835.70 (2021).

¶ 45    Having determined that plaintiff was not without fault in the overpayment of PUA benefits, the Board did not consider whether recoupment would be contrary to equity and good conscience. On appeal, the Department rests on the fault determination and chooses not to address the issue of equity and good conscience. We can dispose of that issue in short order. Understandably confused by the intersecting array of pandemic-era unemployment programs and their eligibility criteria, plaintiff applied for PUA benefits and obtained $20,000 from the program. While receiving those

benefits, plaintiff was sent mixed signals about whether the benefits were authorized. When the Department finally decided that the benefits were unauthorized and ordered plaintiff to repay them, plaintiff claimed financial hardship because he is 72 years old, has diabetes and cancer, is on expensive medication, and subsists on Social Security alone, having had difficulties finding work. The Department has never questioned these representations, which make a compelling case that recoupment would be contrary to equity and good conscience.

¶ 46                                         III. CONCLUSION

¶ 47    Because the Board erred in finding that plaintiff was not without fault in the overpayment of the PUA benefits and the record establishes that recoupment of the $20,000 overpayment would be contrary to equity and good conscience, we reverse the judgment of the circuit court of McHenry County and reverse the Board's decision.

¶ 48    Reversed.

*Amato v. Department of Employment Security*, **2025 IL App (2d) 240164**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 23-MR-46; the Hon. Joel D. Berg, Judge, presiding. |
| **Attorneys for Appellant:** | Gregory P. Amato, of Woodstock, appellant *pro se*. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for appellees. |